# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GALDERMA LABORATIORES, L.P. and GALDERMA S.A., <br><br> Plaintiffs, <br><br> v. <br><br> MEDINTER US, LLC, MEDINTER LTD., ANTECO PHARMA, LLC, ATTWIL VASCULAR TECHNOLOGIES LP, ATTWILL MEDICAL SOLUTIONS, INC., DERMAVANCE PHARMACEUTICALS, INC. and MEDGRAFT MICROTECH, INC., <br><br> Defendants. | Civil Action No. 18-1892-CFC-CJB |

Stephen B. Brauerman, BAYARD, P.A., Wilmington, DE; Richard L. Bolton, BOARDMAN & CLARK, LLP, Madison, WI, Attorneys for Plaintiffs.

Jack B. Blumenfeld and Michael J. Flynn, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; Joseph A. Mahoney, MAYER BROWN LLP, Charlotte, NC; and B. Clayton McCraw and Ying-Zi Yang, MAYER BROWN LLP, New York, NY, Attorneys for Defendants.

**MEMORANDUM OPINION**

October 25, 2019
Wilmington, Delaware


**BURKE, United States Magistrate Judge**

In this patent infringement action filed by Plaintiffs Galderma Laboratories, L.P. and Galderma, S.A. (collectively "Galderma" or "Plaintiffs") against Defendants Medinter US LLC, Medinter Ltd. (collectively "Medinter"), Anteco Pharma LLC ("Anteco"), Attwill Medical Solutions, Inc. and Attwill Vascular Technologies LP (collectively "Attwill"), DermAvance Pharmaceuticals, Inc. ("DermAvance") and Medgraft Microtech, Inc. ("Medgraft"), presently before the Court is Defendant Anteco's renewed motion to dismiss for improper venue, filed pursuant to Federal Rule of Civil Procedure 12(b)(3) ("Motion"). (D.I. 36) For the reasons that follow, the Court orders that this Motion be GRANTED.

## I. BACKGROUND

### A. Procedural Background

Plaintiffs filed their initial Complaint on November 29, 2018 against six of the seven current Defendants, including Anteco, alleging infringement of the patents-in-suit. (D.I. 1) On February 22, 2019, Anteco filed a motion to dismiss the claims against it for improper venue. (D.I. 26)

Thereafter, on March 5, 2019, Plaintiffs filed the operative First Amended Complaint ("FAC") against all seven current Defendants. (D.I. 33) Anteco then renewed its motion to dismiss for improper venue by filing the instant Motion on March 18, 2019. (D.I. 36) Briefing on the Motion was completed on May 3, 2019. (D.I. 69)

On July 30, 2019, United States District Judge Colm F. Connolly referred this case to the Court to hear and resolve all pretrial matters, up to and including expert discovery matters. (D.I. 78) Then on September 13, 2019, all parties in the case consented to the Court's jurisdiction to resolve the instant Motion, as well as two other motions that remain pending. (D.I. 85)

2

## B. Factual Background

Plaintiff Galderma Laboratories, L.P. is a Texas limited partnership with a principal place of business in Fort Worth, Texas. (D.I. 33 at ¶ 2) Plaintiff Galderma S.A. is a Swiss company with its principal place of business in Switzerland. (*Id.* at ¶ 3) Galderma S.A. is the current assignee of the patents-in-suit, which bear on dermatology-related injectable formulas: United States Patent Nos. 6,716,251 and 7,731,758 (collectively, the "patents-in-suit"). (*Id.* at ¶¶ 24, 30) Galderma Laboratories, L.P. is the exclusive licensee of the patents-in-suit in the United States. (*Id.* at ¶¶ 29, 34)

Defendant Attwill Vascular Technologies LP is a limited partnership organized under the laws of Delaware, and has its principal place of business in Wisconsin. (*Id.* at ¶¶ 7, 19-20) Defendant Attwill Medical Solutions, Inc., which is described in the FAC as a "division of" Attwill Vascular Technologies LP, is a Delaware corporation with its principal place of business in Wisconsin. (*Id.* at ¶¶ 8, 19-20) Defendant Anteco is a limited liability company organized and existing under the laws of Wisconsin; it too has its principal place of business in Wisconsin. (*Id.* at ¶ 6)

In the FAC, Plaintiffs allege infringement of the patents-in-suit, in that they allege that all Defendants manufacture, use, offer for sale and sell in the United States DERMA VEIL CUTANEOUS BIO-STIMULANT ("DERMA VEIL" or the "accused product"), and that Defendants export from the United States that product. (*See generally* D.I. 33) With regard to the roles that each Defendant (other than Anteco) is alleged to have played in the infringement, Plaintiffs more specifically allege that: (1) Medgraft formed an alliance with one or both of the Medinter entities to offer for sale and sell DERMA VEIL made in the U.S. to buyers in foreign countries, and that Medgraft licenses to one or both of the Medinter entities the right to

3

manufacture and distribute DERMA VEIL worldwide; (2) Medinter manufactures DERMA VEIL out of its U.S.-based facilities in Houston, Texas; (3) Attwill Medical Solutions, Inc. also "manufactures some or all of the DERMA VEIL product, and benefits financially by selling and/or otherwise providing the same to Medinter Ltd."; (4) Attwill Vascular Technologies LP directs and controls Attwill Medical Solutions, Inc.; and (5) DermAvance formed an alliance with one or both of the Medinter entities, including through licensing and distribution agreements and through efforts to help obtain approval by the United States Food and Drug Administration for DERMA VEIL, and it encouraged Medinter to manufacture more DERMA VEIL for sale in the U.S. and in foreign countries. (*Id.* at ¶¶ 14-22)

Regarding Anteco's role and structure, Plaintiffs allege in the FAC that on November 16, 2017, Attwill Vascular Technologies LP "acquired" Anteco. (*Id.* at ¶ 18) They assert that as a result of this, Anteco and Attwill Medical Solutions, Inc. thereafter "operate[] as an integrated, unitary business[.]" (*Id.*) Plaintiffs additionally allege the following facts in support of this statement:

- Both Attwill entities currently operate at the same business address at 925 Development Drive in Lodi, Wisconsin. (*Id.*) Anteco formerly shared that same business address as well, and did so up through at least August 2018. (*Id.*; D.I. 64, ex. 5) Today, Anteco's registered business address is a residential address in Waunakee, Wisconsin; it appears that Anteco may have made this address change on or around March 11, 2019. (D.I. 64, ex. 3) This Waunakee address is the home address of Howard Teeter, Anteco's former Managing Partner. (D.I. 64, ex. 1 at 1; *id.*, ex. 3)

- As of at least April 2019, when one typed in the website address for Anteco (represented by Plaintiffs to be www.antecopharma.com), one was directed to Attwill's website (www.attwillmedical.com). (D.I. 64 at ¶ 3 & ex. 2)

4

As to how or when Anteco's connection with DERMA VEIL began and ended, Plaintiffs attach as an exhibit a December 6, 2018 letter from Mr. Teeter to Plaintiffs' counsel. (D.I. 64, ex. 1) In the letter, Mr. Teeter states that in November 2017, Anteco sold its assets to Attwill, and that Anteco "no longer exists as an operating company and has no capability to manufacture products of any kind." (*Id.* at 1; *see also* D.I. 70, ex. A) The letter also states that Anteco did have a "short-term manufacturing agreement" with Medinter that terminated in February 2015, and that during this association: (1) Anteco was "one of several subcontractors[ of Medinter;]" (2) Anteco "derived no benefit from Medinter's products other than reimbursement for its services and expenses[;]" and (3) "[b]ulk shipments of product from [Anteco's] facility were arranged by Medinter through third party carriers." (D.I. 64, ex. 1 at 1-2) Plaintiffs, however, point to an exhibit attached to the FAC that appears to contradict the assertion that Anteco stopped manufacturing DERMA VEIL in February 2015: a September 2016 document that lists Anteco as a manufacturer (along with Medinter) of DERMA VEIL in the United States. (D.I. 33, ex. F)

For its part, Anteco included a declaration from Mr. Teeter along with its Motion. (D.I. 38) In the declaration, Mr. Teeter asserts, *inter alia*, that: (1) he is one of two controlling shareholders in Anteco; (2) Anteco has not been and is not wholly owned or controlled by Attwill, nor has it or does it operate as an integrated, unitary business with Attwill; (3) the November 2017 transaction between Attwill and Anteco was not a merger or acquisition of Anteco by Attwill; instead, it was one in which Anteco simply sold its assets to Attwill pursuant to an Asset Purchase Agreement; (4) Anteco remains a separate and distinct entity that does not today share its business location with Attwill; (5) Attwill now operates at a site in Wisconsin previously used by Anteco before the November 2017 asset sale; and (6) Anteco previously did

5

contract work for Medinter in Wisconsin and Medinter made arrangements for the shipping of any finished product made by Anteco. (*Id.*; *see also* D.I. 70, ex. A) Anteco also submitted and made of record a copy of the November 2017 Asset Purchase Agreement. (D.I. 70, ex. A)

## II. STANDARD OF REVIEW

### A. Federal Rule of Civil Procedure 12(b)(3), Patent Venue and 28 U.S.C. § 1400(b)

A party may file a motion to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). In patent infringement actions, venue is proper for domestic corporations: (1) in the judicial district where the defendant resides, or (2) where the defendant has committed acts of infringement and has a regular and established place of business. 28 U.S.C. § 1400(b) ("Section 1400(b)").[1] In 1957, the Supreme Court of the United States held in *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222 (1957), that Section 1400(b) "is the sole and exclusive provision controlling venue in patent infringement actions, and that it is not to be supplemented by the provisions [of the general corporation venue statute,] 28 U.S.C. § 1391(c)[.]" 353 U.S. at 229. In 2017, the Supreme Court reaffirmed the *Fourco Glass* decision. *See TC Heartland LLC v. Kraft Food Grp. Brands LLC*, 137 S. Ct. 1514 (2017).

For purposes of the first prong of Section 1400(b), a domestic corporation "resides" only in its state of incorporation. *TC Heartland LLC*, 137 S. Ct. at 1516-17; *see also Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706, 707 n.2 (1972). For purposes of the second prong of Section 1400(b), there are two requirements: (1) the defendant must have committed acts of infringement in the relevant district; and (2) the defendant must have a regular and

---

[1] Here, Anteco is not a corporation; it is instead a limited liability company. No party has suggested to the Court that the test for venue for domestic corporations, set out above, should be applied any differently to Anteco. With any such argument being waived, the Court will apply the relevant test to Anteco.

6

established place of business in the district. *Bristol-Myers Squibb Co. v. Mylan Pharms. Inc.*, C.A. No. 17-379-LPS, 2017 WL 3980155, at *6 (D. Del. Sept. 11, 2017).

Upon a motion by a defendant challenging venue in a patent case, the plaintiff bears the burden of persuasion to show that venue is proper. *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018); *Bristol-Myers Squibb Co. v. Aurobindo Pharma USA Inc.*, C.A. No. 17-374-LPS (CONSOLIDATED), C.A. No. 17-379-LPS, 2018 WL 5109836, at *1 (D. Del. Oct. 18, 2018). "[W]hen confronted with a motion to dismiss for improper venue, the Court may consider both the complaint and evidence outside the complaint." *Bristol-Myers Squibb Co.*, 2018 WL 5109836, at *2. "The Court will accept any venue-related allegations in the complaint as true, unless those allegations are contradicted by the defendant's affidavits[,]" and the Court may also consider any affidavits submitted by the plaintiff. *Id.*

### B. Venue-related Discovery

The Court may also grant venue-related discovery before determining whether venue is appropriate in order "to ascertain the facts bearing on such issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978). Venue-related discovery is appropriate "unless a plaintiff's claim is 'clearly frivolous[.]'" *Bristol-Myers Squibb Co.*, 2017 WL 3980155, at *21 (quoting *Rocke v. Pebble Beach Co.*, 541 F. App'x. 208, 212 (3d Cir. 2013)) (certain quotation marks omitted). "The law is equally clear, however, that a plaintiff may not 'undertake a fishing expedition based only upon bare allegations, under the guise of [venue] discovery.'" *Id.* (quoting *Eurofins Pharma U.S. Holdings v. BioAlliane Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010) (discussing the similar standard for jurisdictional discovery)). That is, a court should not just permit venue discovery as a matter of course; before allowing the discovery to proceed, the court must be satisfied that there is some indication that venue in the forum is appropriate as to the

defendant. *Cf. Fidelity Nat. Info. Servs., Inc. v. Plano Encryption Techs., LLC*, Civil Action No. 15-777-LPS-CJB, 2016 WL 1650763, at *3 (D. Del. Apr. 25, 2016) (discussing the similar standard for jurisdictional discovery). "To show that discovery is warranted, a party must, at a minimum, state a non-frivolous basis for venue and do so with reasonable particularity." *Bristol-Myers Squibb Co.*, 2017 WL 3980155, at *21 (internal quotation marks and citation omitted).

### III. DISCUSSION

In opposing the Motion, Plaintiffs claim that venue as to Anteco is appropriate in this District under the first prong of Section 1400(b), not because Anteco itself resides in Delaware (as noted above, Anteco is organized in Wisconsin), but because: (1) the Attwill entities are Delaware residents; (2) Attwill is the alter ego of Anteco; such that (3) Attwill's residence should be imputed to Anteco for purposes of venue. (D.I. 63 at 1-3) Below, the Court will first set out the legal standards relevant to this type of alter ego analysis. Thereafter, it will explain why it agrees with Anteco that Plaintiffs have not done enough to withstand the Motion.

#### A. Legal Standards Regarding Alter Ego Analysis

For venue purposes in patent infringement cases, the residency of one entity may be imputed to another in order to satisfy the first prong of Section 1400(b), including in circumstances where one corporation acts as the alter ego of another. *Bristol-Myers Squibb Co.*, 2018 WL 5109836, at *3 (noting that a finding that a corporate entity is the alter ego of another is not a holding that the entity at issue is a resident of two places, but instead that the law allows a court to treat that entity "*as if* it were a resident in a second district") (certain emphasis in original, certain emphasis omitted); *see also Minn. Mining & Mfg. Co. v. Eco Chem, Inc.*, 757

8

F.2d 1256, 1265 (Fed. Cir. 1985). The United States Court of Appeals for the Third Circuit[2] has held that a legally distinct entity can be the alter ego of another entity (and thus subject to the court "piercing the corporate veil"): (1) when a court finds that there is a fundamental lack of corporate separateness between the entities; and (2) where this situation also presents an element of either fraud, injustice, or unfairness in the use of the corporate form. *See Trustees of Nat. Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 194 (3d Cir. 2003); *Bristol-Myers Squibb Co.*, 2018 WL 5109836, at *4.[3] In the end, in order to succeed on an alter ego theory of liability, a plaintiff must establish that in all aspects of the business, the relevant corporate entities "actually functioned as a single entity and should be treated as such." *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001).

To determine whether there is a lack of corporate separateness (i.e., whether, here, Anteco's corporate separateness is little more than a "legal fiction"), "[t]he Third Circuit considers multiple non-exclusive factors . . . including":

> [G]ross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of [subsidiary] corporation, siphoning of funds from the [subsidiary] corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of

---

[2] Both parties cite to federal common law as set out by the Third Circuit in articulating the applicable standard for establishing alter ego status. (D.I. 63 at 6-7; D.I. 69 at 2-3) The Court will utilize that case law here. *See Bristol-Myers Squibb Co.*, 2018 WL 5109836, at *4 n.4 ("The parties agree that Third Circuit law governs, as corporate-veil piercing does not present questions unique to patent law.").

[3] Thus, the Third Circuit does not require proof of actual fraud in order to show that one corporate entity is the alter ego of another. *Trustees*, 332 F.3d at 194; *T-Jat Sys. 2006 Ltd. v. Expedia, Inc. (DE)*, C.A. No. 16-581-RGA-MPT, 2017 WL 896988, at *5 (D. Del. Mar. 7, 2017). However, where the conduct alleged to justify piercing the corporate veil is that the corporation as a whole is a "sham" or "façade," then a finding "akin to fraud" is necessary. *Trustees*, 332 F.3d at 194 n.7 (internal quotation marks and citation omitted). Here, although the record is a bit uncertain on this issue, it does not appear to the Court that Plaintiffs are truly asserting that Anteco is, as a whole, a "sham" or "façade." Thus, the Court will not focus on whether a showing of actual fraud has or could be made. *See Blair v. Infineon Techs. AG*, 720 F. Supp. 2d 462, 471 & n.14 (D. Del. 2010).

9

>corporate records, and whether the corporation is merely a facade for
>the operations of the dominant stockholder.

*Bristol-Myers Squibb Co.*, 2018 WL 5109836, at *4 (quoting *Pearson*, 247 F.3d at 484-85). No single factor is dispositive, and in considering whether veil piercing is appropriate, a court must assess the totality of the circumstances. *Trinity Indust., Inc. v. Greenlease Holding Co.*, 903 F.3d 333, 365 (3d Cir. 2018). The presence of a number of these factors can also be sufficient to establish that an element of injustice or fundamental unfairness is at play. *See Trustees*, 332 F.3d at 194.

### B. Analysis

In analyzing the arguments relevant to the Motion, the Court first pauses to address what hurdle Plaintiffs must overcome in order to avoid dismissal. In order to conclusively establish venue as to Anteco in this case, Plaintiffs would ultimately be required to show by clear and convincing evidence that Anteco is the alter ego of Attwill. *Trinity Indust., Inc.*, 903 F.3d at 366 & n.26; *Trustees*, 332 F.3d at 194; *Bristol-Myers Squibb Co.*, 2018 WL 5109836, at *4. That showing is "'notoriously difficult for plaintiffs to meet[,]'" *Trinity Indust., Inc.*, 903 F.3d at 365 (quoting *Pearson*, 247 F.3d at 485), and at this stage, Plaintiffs are not asserting that they have done so. Instead, Plaintiffs here argue that they have established a record sufficient to make out a *prima facie* showing of venue, sufficient to defeat the Motion—or, failing that, that they have at least made a sufficient record to entitle them to pursue venue discovery. (D.I. 63 at 3 ("At this stage, before discovery, Galderma need only make a *prima facie* showing of venue. *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004). It has done so. However, should there be any doubt,

Galderma requests focused, venue-related discovery into Anteco's and Attwill's structures, relationships and statements."))[4]

As to this Motion, the record that Plaintiffs have made is surely not robust. Thus, the only real question in the Court's mind is whether what little there is of record is sufficient to surmount the "clearly frivolous" bar and to allow for venue discovery. For the following four reasons, the Court concludes that it is not.

First, Plaintiffs have failed to point to any record evidence relating to most of the factors that the Third Circuit has used to address corporate separateness. That is, there is no evidence or allegations regarding gross undercapitalization of Anteco, failure of Anteco or Attwill to observe corporate formalities, nonpayment of dividends, Anteco's insolvency, siphoning of funds from Anteco by Attwill, nonfunctioning of officers and directors, or as to the absence of corporate records. (*See* D.I. 69 at 3-4)

Second, what little evidence Plaintiffs *have* put forward does not speak impactfully to the prospect that Anteco's corporate separateness from Attwill is a "legal fiction." In support of

---

[4] Recently, the Court has explained why, in the context of resolving motions to dismiss for lack of personal jurisdiction, the Third Circuit does not appear to see a difference between the type of record required to make out a *prima facie* showing of personal jurisdiction and the type of record required to make out an entitlement to jurisdictional discovery. *See 3G Licensing, S.A. v. Lenovo Grp. Ltd.*, Civil Action No. 17-84-LPS, 2019 WL 3974539, at *8-9 (D. Del. Aug. 22, 2019). Put differently, according to Third Circuit case law, a plaintiff cannot be entitled to jurisdictional discovery if it has not made out a *prima facie* showing of personal jurisdiction. *Id.* As the standards for challenges to personal jurisdiction are similar to the standards for challenges to venue, that begs the question: Can a plaintiff fail to make out a *prima facie* showing as to venue regarding a defendant, but still have demonstrated that it is entitled to venue discovery as to that defendant? Plaintiffs appear to believe that the answer to that question is "Yes." (D.I. 63 at 3) The Court is not sure that is correct, but it is also not aware of a Third Circuit case speaking directly to this issue. In light of this, and for the reasons further set out below, here the Court will simply ask whether Plaintiffs have made a sufficient showing to warrant *venue discovery*, and in doing so, it will utilize the "clearly frivolous" standard that the Third Circuit has referenced in deciding whether or not venue discovery is appropriate.

11

their position, Plaintiffs point to evidence that: (1) Anteco's website automatically redirects to Attwill's website, (D.I. 64, ex. 2); and (2) according to certain corporate filings, Attwill and Anteco were both associated with the same Wisconsin address for at least nine months (and perhaps longer) after Anteco's November 2017 asset sale to Attwill, (D.I. 64, exs. 3-5; D.I. 63 at 2, 8-9)[5] Is this *some* evidence (i.e., more than *nothing*) that could go to the question of alter ego status? It is, but barely so. And it is also worth noting that these two facts are wholly consistent with the premise (set forth by Anteco in its briefing and in Mr. Teeter's declaration) that Anteco's assets have been sold, it no longer exists as an operating company and it otherwise maintains a separate corporate existence from Attwill. (D.I. 69 at 5 (Anteco noting, as to the change of address issue, that "Anteco's failure to update [its] address, after selling its assets and becoming a non-operational entity, in no way supports an inference that Attwill and Anteco operated jointly as a common enterprise."))[6]

Third, Plaintiffs' assertions regarding the circumstances surrounding the November 2017 transaction involving Anteco and Attwill—and how that transaction purportedly supports Plaintiffs' argument about alter ego status—seem off base at best. There is no dispute that in that November 2017 transaction, Attwill purchased all of Anteco's assets pursuant to the terms of an

---

[5] In the FAC, Plaintiffs also allege that Attwill and Anteco "share overlapping management, including but not limited to William Jackson (Chief Financial Officer) and Attilio DiFiore (Chief Scientific Officer)." (D.I. 33 at ¶ 20) But in its briefing regarding the Motion, Plaintiffs do not suggest that these facts are relevant to the alter ego analysis. (*See generally* D.I. 63) And so the Court will not further consider them here.

[6] Indeed, with regard to the redirected website issue, in some ways, the evidence presented by Plaintiffs only bolsters Anteco's position. Plaintiffs presented evidence of what the Attwill website looked like as of April 2019. (D.I. 64, ex. 2) But on that Attwill home page, there is a November 2017 press release from Attwill touting its acquisition of Anteco's assets. And in it, Attwill's managing partners speak only about how the transaction will allow *Attwill* to "add capacity" and "expand[]" going forward. (*Id.*) No mention is made of Anteco, other than that its assets were purchased by Attwill. (*See* D.I. 69 at 5)

Asset Purchase Agreement. (D.I. 33 at ¶ 6, D.I. 38 at ¶ 7) And there seems to be no dispute that since then, as was set out in Mr. Teeter's December 2018 letter, "Anteco no longer exists as an operating company and has no capability to manufacture products of any kind." (D.I. 64, ex. 1 at 1; *see also* D.I. 63 at 8 (Plaintiffs quoting this statement from Mr. Teeter's letter approvingly and noting that Mr. Teeter's letter thus "confirmed" these facts)) But in their briefing, Plaintiffs then go on to misquote Mr. Teeter's letter, by asserting that in it, he "confirmed that Anteco ceased to exist *and that the operating authority was held 'in the Attwill organization.' . . . Thus, Teeter presented Attwill as the sole 'organization' responsible for Anteco's conduct.*" (D.I. 63 at 8 (emphasis added) (quoting D.I. 64, ex. 1)) Yet Mr. Teeter's letter, in fact, said nothing of the kind. What it actually said was that Anteco "no longer exists as an operating company" and that Mr. Teeter was "responding . . . as a former Managing Partner of Anteco . . . with no relationship to the plaintiff or Medinter [] and no operating authority in the Attwill organization[.]" (D.I. 64, ex. 1) In the end, the Court is aware of no relevant authority suggesting that when a company sells all of its assets to another company, that fact alone is persuasive evidence that the selling company has become the alter ego of the acquiring company. And Plaintiffs' "remarkable" misreading of Mr. Teeter's letter, (D.I. 69 at 4), further undermines their argument that the circumstances of the November 2017 transaction are somehow helpful to them here.

Fourth, Plaintiffs' allegations are also wanting as to the second element of the alter ego test: the requirement that any closeness or intermingling of the corporate forms promotes fraud, unfairness, or injustice. *Bristol-Meyers Squibb Co.* 2018 WL 5109836 at *5. The FAC makes no explicit reference to this element. *Cf. T-Jat Sys. 2006 Ltd. v. Expedia, Inc. (DE)*, C.A. No. 16-581-RGA-MPT, 2017 WL 896988, at *4-5 (D. Del. Mar. 7, 2017) (concluding that defendants' motion to dismiss for improper venue as to certain defendants should be granted

where plaintiff had asserted that those defendants were alter egos of each other but "[did] not allege the second element of fraud or injustice of use of the corporate form"). Moreover, in its briefing, the only clear argument Plaintiffs make as to this second element is that "Anteco's legal fiction, if left to stand, will unfairly prejudice Galderma requiring piecemeal litigation in different districts." (D.I. 63 at 3) Yet were the Motion granted, Plaintiffs could still pursue liability as to Anteco in another federal district. And they may well be able to take third-party discovery of Anteco in this case. To be sure, if Plaintiffs had to seek redress for Anteco's liability in a different district or were they to have to seek third-party discovery of Anteco here, that might amount to an *inconvenience*. But Plaintiffs have made no showing (nor pointed the Court to any relevant caselaw suggesting) that this would amount to the type of "unfairness" or "injustice" that is required to pierce the corporate veil pursuant to Third Circuit precedent. *See Int'l Bus. Machs. Corp. v. Expedia, Inc.*, Civil Action No. 17-1875-LPS-CJB, 2019 WL 3322542, at *7 (D. Del. July 24, 2019).

For all of these reasons, Plaintiffs have failed to sufficiently establish an entitlement to venue discovery as to their assertion that Anteco is the alter ego of Attwill.[7]

---

[7] In an eight-line paragraph near the end of their answering brief, Plaintiffs appear to make an alternative argument as to venue for Anteco: that "venue [as to Anteco] may be imputed to Attwill based on agency[.]" (D.I. 63 at 9-10 (noting that "the evidence described herein shows that Anteco functions as Attwill's agent")) For one thing, it is not even clear if Plaintiffs do indeed view this as a separate venue-related argument, as the paragraph comes in a section of their brief entitled "An Alter Ego Relationship Exists Between Anteco and Attwill." (D.I. 63 at 8-10 (emphasis omitted)) Moreover, to the extent Plaintiffs are attempting to pursue such a separate basis for venue, the Court concludes that they have not done enough to even set out what their case *is* (let alone show that the evidence supports venue discovery as to that case)). This brief paragraph declines to cite to any relevant caselaw from the Third Circuit or this District on this issue. Nor does it attempt to explain: (1) what factors would go into assessing whether Anteco is Attwill's agent in this context; or (2) how (even if Anteco was Attwill's agent) that fact would help establish that Attwill's *residence* in this District should be imputed to Anteco. *Cf. Astrazeneca AB v. Mylan Pharms. Inc.*, Civil Action No. 18-1562-CFC (D. Del.) (D.I. 156 at 10) ("3M and Mylan's alleged agency relationship would not require imputing 3M's

## IV. CONCLUSION

For the reasons set out above, the Court orders that the Motion is GRANTED.[8] An appropriate Order will issue.

Because this Memorandum Opinion may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version (if necessary) of the Memorandum Opinion. Any such redacted version shall be submitted no later than **October 30, 2019**, for review by the Court, along with a motion for redaction that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (internal quotation marks and citation omitted). The Court will subsequently issue a publicly-available version of its Memorandum Opinion.

---

Delaware residency to Mylan for venue purposes" as "[f]inding an agency relationship simply permits a court to attribute specific acts by the agent to the principal; the agent and the principal are still separate corporations.") (internal quotation marks and citation omitted). For these reasons, the Court finds any agency-related argument here to be wanting.

[8] 28 U.S.C. § 1406 states that if a court grants a Rule 12(b)(3) motion based on improper venue, it shall dismiss the case as to that party, or "if it be in the interest of justice" it may transfer that case as to the party to another district in which the case could have been brought. 28 U.S.C. § 1406(a); *see also* (D.I. 37 at 3). Here, Plaintiffs did not request transfer in lieu of dismissal, or articulate to which court transfer should be made. In light of this, the Court's order is for dismissal.