# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GALDERMA LABORATORIES, L.P. and GALDERMA S.A., | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Civil Action No. 18-1892-CFC-CJB ) |
| MEDINTER US, LLC, MEDINTER LTD., ANTECO PHARMA, LLC, ATTWILL VASCULAR TECHNOLOGIES LP, ATTWILL MEDICAL SOLUTIONS, INC., DERMAVANCE PHARMACEUTICALS, INC. and MEDGRAFT MICROTECH, INC., | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

Jack B. Blumenfeld and Michael J. Flynn, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; Joseph A. Mahoney, MAYER BROWN LLP, Charlotte, NC; and B. Clayton McCraw and Ying-Zi Yang, MAYER BROWN LLP, New York, NY, Attorneys for Plaintiffs.

Ian R. Liston and Johanna Peuscher-Funk, WILSON SONSINI GOODRICH & ROSATI, P.C, Wilmington, DE; Nicole W. Stafford, Aden Allen, Diyang Liu and Matt Blair, WILSON SONSINI GOODRICH & ROSATI, P.C, Austin, TX, Attorneys for Defendants Medinter US LLC, Medinter Ltd. and Medgraft Microtech, Inc.

**MEMORANDUM OPINION**

March 11, 2020
Wilmington, Delaware

*[signature]*
**BURKE, United States Magistrate Judge**

In this patent infringement action filed by Plaintiffs Galderma Laboratories, L.P. and Galderma, S.A. (collectively "Galderma" or "Plaintiffs") against Defendants Medinter US LLC ("Medinter US") and Medinter Ltd. (collectively, the "Medinter entities"), Anteco Pharma LLC ("Anteco"), Attwill Medical Solutions, Inc. and Attwill Vascular Technologies LP (collectively, "Attwill"), DermAvance Pharmaceuticals, Inc. ("DermAvance") and Medgraft Microtech, Inc. ("Medgraft"), presently before the Court is Defendants Medinter US, Medinter Ltd. and Medgraft's ("Moving Defendants") motion to dismiss for lack of subject matter jurisdiction and failure to state a claim, filed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively ("Motion"). (D.I. 47) For the reasons that follow, the Court orders that this Motion be DENIED.

## I. BACKGROUND

### A. Procedural Background

Plaintiffs filed their initial Complaint on November 29, 2018 against six Defendants (all of the above-referenced Defendants, except Medgraft); the Complaint alleged infringement of the two patents-in-suit: United States Patent Nos. 6,716,251 (the "'251 patent") and 7,731,758 (the "'758 patent") (collectively, the "patents-in-suit"). (D.I. 1) Thereafter, on March 5, 2019, Plaintiffs filed the operative First Amended Complaint ("FAC") against all seven Defendants listed above. (D.I. 33)[1] Moving Defendants filed the instant Motion on April 2, 2019. (D.I. 47) Briefing on the Motion was completed on May 24, 2019. (D.I. 76)

---

[1] On October 25, 2019, the Court entered an Order granting a motion to dismiss Defendant Anteco from this case. (D.I. 99)

On July 30, 2019, United States District Judge Colm F. Connolly referred this case to the Court to hear and resolve all pretrial matters, up to and including expert discovery matters. (D.I. 78) Then on September 13, 2019, all parties in the case consented to the Court's jurisdiction to resolve the instant Motion, as well as two other motions that were then pending. (D.I. 85)

**B.     Factual Background**

The patents-in-suit are directed to bioresorbable injectable implants for human administration and reconstitutable products (which, upon the addition of water, become such implant products). (D.I. 33 at ¶¶ 24-25, 30-31 & exs. A-B; D.I. 48 at 4) In the FAC, Plaintiffs allege that the various Defendants infringe the patents-in-suit, in that Plaintiffs generally allege that Defendants manufacture, use, offer for sale and sell in the United States DERMA VEIL CUTANEOUS BIO-STIMULANT ("DERMA VEIL"), and that certain Defendants export from the United States that product. (*See generally* D.I. 33) Plaintiffs allege that Defendants have infringed at least claims 1, 4-7, 10, 11, 14-18 and 20 of the '251 patent and at least claims 1-6 and 9-12 of the '758 patent. (*Id.* at ¶¶ 71-87)

To the extent that other factual allegations are relevant to the resolution of this Motion, the Court will address them below in Section III.

**II.     STANDARD OF REVIEW**

The only actionable portions of the Motion raise grounds for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] When presented with a Rule 12(b)(6) motion to

---

[2]     Moving Defendants had also noted that in the FAC, Plaintiffs stated that they "will also seek a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202 that Defendants' future manufacture, use, offer for sale, sale in the U.S., or importation into the U.S. of DERMA VEIL" is infringing, (D.I. 33 at ¶ 11; *see also id.* at ¶ 70); to the extent such an assertion amounted to a "declaratory judgment claim[,]" Moving Defendants sought to dismiss that claim for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), (D.I. 48 at 18-20). Plaintiffs, however, confirmed that they are not presently asserting such a declaratory judgment claim.

dismiss for failure to state a claim, a court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the court separates the factual and legal elements of a claim, accepting all of the complaint's well-pleaded facts as true, but disregarding any legal conclusions. *Id.* at 210-11. Second, the court determines whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In assessing the plausibility of a claim, the court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler*, 578 F.3d at 210 (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

III.   **DISCUSSION**

With their Motion, Moving Defendants argue that dismissal of some or all claims against them is appropriate pursuant to Rule 12(b)(6), because in the FAC, Plaintiffs: (1) fail to sufficiently plead plausible allegations of patent infringement as to each specific Defendant, in that the FAC improperly conflates the actions of all Defendants and addresses those Defendants collectively; (2) fail to sufficiently plead indirect infringement as to the Moving Defendants; and (3) fail to sufficiently plead how DERMA VEIL meets every element of at least one claim from each of the two patents-in-suit. The Court will address these arguments in turn below.

   A.   **Does the FAC Improperly Conflate the Various Defendants?**

---

(D.I. 71 at 20) Thus, in this regard, Moving Defendants' Motion is DENIED as MOOT. (D.I. 76 at 1 n.1)

4

First, Moving Defendants assert that the claims against them should be dismissed because Plaintiffs improperly conflate all Defendants (including the three Moving Defendants) in making their infringement allegations, such that one cannot tell what the respective Moving Defendants are alleged to have done that amounts to infringement. (D.I. 48 at 9-11) And as to the Medinter entities more specifically, Moving Defendants argue that the FAC merely refers to those two entities "interchangeably" throughout. (*Id.* at 10)

The Court finds that this argument is not well taken. The FAC does more than simply lump these entities together as an amorphous group. Instead, it contains specific factual allegations as to each Moving Defendant, which sets out why it is plausible that each engaged in at least one type of infringing act. *See N. Star Innovations, Inc. v. Toshiba Corp.*, Civil Action No. 16-115-LPS-CJB, 2016 WL 7107230, at *2 (D. Del. Dec. 6, 2016) (noting that a plaintiff simply has to plead enough facts as to each defendant to render it plausible that that defendant committed at least one type of infringing act in the United States) (citing *M2M Sols. LLC v. Telit Commc'ns PLC*, Civil Action No. 14–1103–RGA, 2015 WL 4640400, at *3 (D. Del. Aug. 5, 2015)).

For example, with regard to Medinter US, the FAC alleges that it is listed in a United States Food and Drug Administration publication as the "specification developer and the U.S. manufacturer for DERMA VEIL" and that it has "manufactured DERMA VEIL out of its facilities," including a facility in Houston, Texas that it shares with Medinter Ltd. and Medgraft. (D.I. 33 at ¶ 15; *see also id.* at ¶ 36 & ex. D) The FAC alleges that Medinter US's manufacture of the drug was for international commercial distribution; it also asserts that Medinter US induced and encouraged contract manufacturers, like Anteco and Attwill, to assist in manufacturing DERMA VEIL. (*Id.* at ¶ 45)

5

With regard to Medinter Ltd., the FAC alleges that it too has manufactured DERMA VEIL in the United States for international commercial distribution, (*id.*), and that it does so out of the Houston facility that it shares with Medinter US, (*id.* at ¶ 16). In further support of this, the FAC attaches a license agreement between Medinter Ltd. and DermAvance, which states that Medinter Ltd. has a worldwide, exclusive license "to manufacture" DERMA VEIL and that it has the right to grant sublicenses. (*Id.*, ex. J at 1) And the FAC also asserts that Medinter Ltd. induced and encouraged contract manufacturers, like Anteco and Attwill, to assist in manufacturing DERMA VEIL. (*Id.* at ¶ 45) To that end, the FAC incorporates a photo of a vial of DERMA VEIL and DERMA VEIL's Instructions for Use, which both state that Anteco is manufacturing DERMA VEIL "for" Medinter Ltd. (*Id.* at ¶¶ 45, 47 & exs. F-G)

And as to Medgraft, the FAC asserts that it entered into a license agreement with the Medinter entities, in which it licenses infringing technology to those entities, and by which it encourages those entities to manufacture DERMA VEIL in the United States for international sale and distribution. (*Id.* at ¶¶ 41-42) Attached as an exhibit to the FAC is a document that appears to support that contention, at least as to the relationship between Medgraft and Medinter Ltd. (*Id.*, ex. J at 11)

The FAC's two patent infringement counts (one for each patent-in-suit) incorporate all of the above allegations by reference. (*Id.* at ¶¶ 71, 79) Thus, when Plaintiffs in those counts go on to allege that Medinter US and Medinter Ltd. have directly infringed by, *inter alia*, manufacturing the accused product in the United States for international distribution, (*id.* at ¶¶ 73, 81), and that Medgraft has indirectly infringed[3] by encouraging the Medinter entities to

---

[3] The Court reads the counts as alleging that Medgraft only indirectly infringes the patents-in-suit, not that it also directly infringes. (D.I. 76 at 2)

manufacture the product, (*id.* at ¶¶ 76, 85), Plaintiffs have therefore sufficiently articulated, as to each Defendant, who is said to have done what that amounts to U.S.-based patent infringement. That is sufficient to avoid the sin of improper "conflating" for pleading purposes. *See Mayne Pharma Int'l Pty Ltd. v. Merck & Co., Inc.*, Civil Action No. 15-438-LPS-CJB, 2015 WL 7833206, at *3 (D. Del. Dec. 3, 2015) (finding that plaintiff had sufficiently pleaded direct infringement as to two entities, where the body of the complaint pleaded specific facts as to both of the entities setting out the type of U.S.-based infringing acts both entities were alleged to have conducted).

### B. Does the FAC Sufficiently Plead Induced Infringement?

Next, Moving Defendants argue that Plaintiffs have failed to sufficiently plead induced infringement. Pursuant to 35 U.S.C. § 271(b) ("Section 271(b)"), "[w]hoever actively induces infringement of a patent shall be liable as an infringer." In order to prove induced infringement, the patentee "must show direct infringement, and that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed. Cir. 2012) (internal quotation marks and citations omitted); *Symantec Corp. v. Comput. Assocs. Int'l, Inc.*, 522 F.3d 1279, 1292-93 (Fed. Cir. 2008) ("Thus, 'inducement requires evidence of culpable conduct, *directed to encouraging* another's infringement, not merely that the inducer had knowledge of the direct infringer's activities.'") (emphasis added) (citation omitted).

Moving Defendants argue that Plaintiffs' induced infringement allegations are insufficient, for three reasons. (D.I. 48 at 12-15) The Court will address these in turn.

Moving Defendants' first argument is that Plaintiffs' induced infringement allegations (including about who exactly is the underlying direct infringer) are confused, because at times

7

Plaintiffs assert that the Medinter entities *indirectly* infringe and at times they also assert that those entities *directly* infringe. (*Id.* at 12-14) But as Plaintiffs rightly respond, "it is not inconsistent for a party . . . to be *both* a direct infringer and [to] induce others to infringe[.]" (D.I. 71 at 9 (emphasis in original)) And with regard to Plaintiffs' allegations of indirect infringement against the Medinter entities, as noted above, Plaintiffs do explain in the FAC who are the direct infringers that the Medinter entities are said to have induced (contract manufacturers such as Anteco and Attwill). (D.I. 33 at ¶ 45 & ex. F) Thus, this argument for dismissal is not well taken.[4]

Moving Defendants' second argument is that Plaintiffs' allegations do not establish how "either of the Medinter entities or Medgraft actively induce others to infringe" the patents-in-suit, because "[m]ost of the acts [of inducement] alleged in the [FAC] are directed to DermAvance's activities and do not clarify how and which Medinter entity induced the manufacturers to infringe." (D.I. 48 at 15) But as Plaintiffs note, (D.I. 71 at 10-11), the FAC does allege that: (1) the Medinter entities induce direct infringement (by manufacturers like Anteco and Attwill) by contracting with them to manufacture the accused product, (D.I. 33 at ¶ 45 & exs. F-G);[5] and (2) Medgraft induced direct infringement by entering into an agreement with one or both Medtiner

---

[4] Admittedly, the form of Plaintiffs' counts of infringement render it confusing as to exactly which Defendants Plaintiffs are accusing of indirect infringement (since those counts seem to call out by name only Medgraft and DermAvance as indirect infringers). (D.I. 33 at ¶¶ 76, 85) But the counts do also charge "Defendants" with indirectly infringing more generally, and they incorporate by reference allegations made earlier in the FAC. (*Id.* at ¶¶ 71, 76, 79, 85) So in light of the additional allegations set out above, the Court considers the counts to fairly allege that the Medinter entities are guilty of indirect infringement.

[5] *See Advanced Optical Tracking, LLC v. Koninklijke Philips N.V.*, Civ. Action No. 12-1292-LPS-CJB, 2013 WL 4786463, at *5 (D. Del. Sept. 9, 2013) (denying a motion to dismiss induced infringement claims where the operative complaint alleged that the inducing infringer required performance of contractual agreements obligating the direct infringer to manufacture the accused products).

8

entities,[6] by which Medgraft licensed the technology necessary to permit manufacture of DERMA VEIL. That is enough to sufficiently identify what acts of inducement are attributed to which inducing infringer.[7]

Moving Defendants' third argument is essentially that, even assuming that Plaintiffs have sufficiently pleaded that Moving Defendants knew of the patents-in-suit as of the pre-filing timeframes alleged in the FAC, there are insufficient facts pleaded to establish that Moving Defendants then "knew that the [other party]'s acts *constituted infringement*." (D.I. 76 at 4

---

[6] At a minimum, the FAC sufficiently and clearly alleges that such a license was entered into with Medinter Ltd. (D.I. 33 at ¶ 41 & ex. J at 11 (noting that Medgraft entered into a license with Medinter Ltd. permitting Medinter Ltd. the right to, *inter alia*, "manufacture" "the glycolic and polylactic formula (the 'Product') of the Company"))

[7] Separately, the Moving Defendants assert that as to Medgraft, the fact that it "licens[ed] its patents to the Medinter entities[,]" which in turn enabled those entities to manufacture DERMA VEIL, cannot amount to a qualifying act of inducement, because "the mere act of licensing [is] insufficient to establish induce[d] infringement." (D.I. 48 at 11) Yet in order to induce infringement under Section 271(b), one simply needs to "actively and knowingly aid[] and abet[] another's direct infringement[,]" *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 675 (Fed. Cir. 1990), by engaging in any one of a "broad . . . range of actions" by which one "in fact causes, or urges, or encourages, or aids another to infringe a patent[,]" *Tegal Corp. v. Tokyo Electron Co., Ltd.*, 248 F.3d 1376, 1378-79 (Fed. Cir. 2001). And Moving Defendants cited to no persuasive authority in support of their claim that the "mere act of licensing" cannot be enough to establish induced infringement. Indeed, it seems to the Court that if an alleged induced infringer licensed a patent to another, and that license was purported to have given the alleged direct infringer the legal right to take some or all of the steps needed to manufacture the accused product, then the provision of such a license could well amount to the "aid" or "encourage[ment]" of direct infringement. *See Kim v. Conagra Foods, Inc.*, No. 01 C 2467, 2003 WL 21222266, at *4 (N.D. Ill. May 23, 2003) ("As a licensor of the accused breads which provides formulas to the licensees and receives fees from the licensees, defendant still may be liable for [induced infringement]."); *In re Dahlgren Int'l, Inc.*, 819 F. Supp. 568, 576 (N.D. Tex. 1992) (in a post-trial decision, explaining that "[a]lthough Dahlgren itself no longer directly makes, uses or sells the infringing devices, Dahlgren has provided technology, drawings, and know-how to Dahlgren U.S.A. through licensing agreements which have enabled Dahlgren U.S.A. to directly infringe the '764 patent. Therefore, on the basis of Dahlgren's inducement of direct infringement, Dahlgren is liable as an infringer for any infringement by Dahlgren U.S.A. of the '764 patent"); *see also Insituform Techs., Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1377-78 (Fed. Cir. 2004).

(certain emphasis omitted, certain emphasis added) (quoting *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017)); *see also* D.I. 48 at 15 (Moving Defendants asserting that "merely pleading knowledge of the patents is not enough")) But if it is true that Medgraft (a) knew of the patents-in-suit as of their issuance dates; (b) had previously cited to a foreign patent application that was related to the '251 patent; (c) was a company well familiar with the state of this art; and (d) had (at or prior to the issuance date of the patents-in-suit) entered into an agreement with the Medinter entities to manufacture what in fact is an infringing product, then (e) it seems plausible to the Court that Medgraft then knew that a direct infringer was actually infringing these patents-in-suit. (D.I. 33 at ¶¶ 40-43) And if it is true that the Medinter entities (a) knew of the patents-in-suit as of their issuance dates; (b) were companies well familiar with the state of this art; (c) manufacture DERMA VEIL themselves; (d) had agreed with Anteco and Attwill that those entities would manufacture DERMA VEIL for them, then (e) it seems plausible to the Court that the Medinter entities also knew pre-suit that a direct infringer was actually infringing these patents-in-suit. *Cf. Elm 3DS Innovations, LLC v. SK Hynix Inc.*, Civil Action No. 14-1432-LPS-CJB, 2015 WL 6126802, at *5 (D. Del. Oct. 16, 2015).

For all these reasons, the Court concludes that Moving Defendants' Motion should be denied as to the indirect infringement claims.

### C. Does the FAC Sufficiently Allege How DERMA VEIL Infringes the Patents-in-Suit?

Lastly, Moving Defendants allege that Plaintiffs fail, pursuant to Section 271(a), to "adequately allege that DERMA VEIL meets every claim limitation from at least one independent claim of the [patents-in-suit]." (D.I. 48 at 16-18)[8]

---

[8] With regard to allegations of direct patent infringement, in order to sufficiently state a claim, a plaintiff must plead facts plausibly indicating that a defendant's accused product

10

As to the '251 patent, Moving Defendants focus on asserted independent claim 1. There they note that the claim is to a "bioresorbable injectable implant for human administration[,]" ('251 patent, col. 5:10-19), and argue that because the FAC only alleges that Moving Defendants manufacture DERMA VEIL as a *lyophilized powder*, (*see* D.I. 33 at ¶ 37), Plaintiffs have not made out a plausible claim of infringement of that claim, (D.I. 48 at 17).[9] But Plaintiffs counter that because lyophilization is a freeze-drying process, which removes water from a product after it is frozen and placed under a vaccum, then "manufacturing DERMA VEIL necessarily involves making the product in an infringing, injectable liquid, and then freeze-drying (lyophilizing) [it] into a powder for distribution." (D.I. 71 at 16) In the Court's view, Moving Defendants are really making a claim construction-type of argument here, in that they are essentially arguing that when claim 1 states that it is to a "bioresorbable injectable implant for human administration" the claim is making reference only to an "*end* product"—and that infringement cannot occur as to a "product" existing at an earlier, "intermediar[y]" stage. (D.I. 76 at 7-8 (emphasis added)) Such an argument is not properly the basis for a grant of a motion to dismiss. *See CareDx, Inc. v. Natera, Inc.*, Civil Action No. 19-567-CFC, 2019 WL 6307647, at *2 (D. Del. Nov. 25, 2019); *Confluent Surgical, Inc. v. HyperBranch Med. Tech., Inc.*, Civil Action No. 17-688-LPS-CJB, 2017 WL 4804264, at *2 (D. Del. Oct. 25, 2017).

---

reads on each of the limitations of at least one asserted claim of a patent-in-suit. *See North Star Innovations, Inc. v. Micron Tech., Inc.*, Civil Action No. 17-506-LPS-CJB, 2017 WL 5501489, at *1 (D. Del. Nov. 16, 2017). After all, if after reading the complaint, the Court cannot conclude that it is plausible that the accused infringer's product reads on a limitation of one of the claims in the patent-in-suit, then it cannot be plausible that the accused infringer actually infringes that patent. *Modern Telecom Sys., LLC v. TCL Corp.*, Civil Action No. 17-583-LPS-CJB, 2017 WL 6524526, at *2 (D. Del. Dec. 21, 2017) (citing cases).

[9] The Court agrees with Moving Defendants that Plaintiffs' arguments about why the FAC makes out a plausible claim of infringement pursuant to 35 U.S.C. § 271(f) are irrelevant, (D.I. 76 at 7), as Count I makes no such allegation, (D.I. 33 at ¶¶ 71-78).

With regard to the '758 patent, Moving Defendants also focus on asserted independent claim 1. There they note that the claim is to a "reconstitutable product" that becomes "a bioresorbable, injectable implant product" (i.e., a fluid) "upon the addition of water" and that includes a "hydrogel precursor" that "forms a hydrogel upon the addition of water." ('758 patent, col. 5:13-23) Moving Defendants argue that Plaintiffs fail to allege how DERMA VEIL "becomes a hydrogel or a gel upon activation[,]" and thus, that Plaintiffs do not plausibly plead infringement of claim 1. (D.I. 48 at 17-18) However, in their answering brief, Plaintiffs point to their allegations in the FAC that DERMA VEIL is activated by injecting a saline solution or sterile water into a vial, and that "[o]nce activated, the formula becomes a suspension of relative viscosity[.]" (D.I. 33 at ¶ 38) They explain that this reference to a "suspension of relative viscosity" is a reference to a hydrogel. (D.I. 71 at 17) In their reply brief, Moving Defendants do not really address this assertion head on. The Court thus does not see why Plaintiffs' allegations in this regard are implausible.[10]

## IV. CONCLUSION

For the reasons set above, the Court orders that the Motion be DENIED. An appropriate Order will issue.

---

[10] To the extent that Moving Defendants argue that the infringement allegations as to this patent should also be dismissed because Plaintiffs are prohibited (due to prosecution history estoppel) from arguing that DERMA VEIL includes a "low viscosity" suspension that can be a hydrogel, (D.I. 48 at 17-18), the Court disagrees. It instead agrees with Plaintiffs that their allegations, read in the light most favorable to them, can be understood to instead allege that the product has a suspension of "relative viscosity" when activated. (D.I. 71 at 17 (citing D.I. 33 at ¶ 38))

Additionally, to the extent that in their reply brief Moving Defendants made a new and different argument as to prosecution history estoppel (one relating to the "usage of gelling agents such as carboxy methyl cellulose and hydroxy propyl methyl cellulose"), (D.I. 76 at 9), so far as the Court can tell, such argument was not put forward in their opening brief. As such, the argument is waived at the motion to dismiss stage.

Because this Memorandum Opinion may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version (if necessary) of the Memorandum Opinion. Any such redacted version shall be submitted no later than **March 16, 2020**, for review by the Court, along with a motion for redaction that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (internal quotation marks and citation omitted). The Court will subsequently issue a publicly-available version of its Memorandum Opinion.