IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **GALDERMA LABORATORIES, L.P.**, *et al.*<br><br>*Plaintiffs*,<br><br>v.<br><br>**MEDINTER US LLC, et al.,**<br><br>*Defendants*. | **Case No. 1:18-cv-01892-JDW-CJB** |

## MEMORANDUM

To get anything done, corporate entities must act through their agents, and when it comes to litigation, they act through their attorneys. But companies cannot insulate themselves from liability with their refusal, or inability, to hire counsel. The Federal Rules of Civil Procedure foreclose such a loophole. While the corporate defendants have answered the patent infringement claims asserted against them in this case, they have failed to otherwise defend themselves in this matter by not hiring new counsel to represent them going forward. As a result, I will enter a default judgment against them.

**I.    BACKGROUND**

**A.    Factual History**

Galderma S.A. is the current assignee of U.S. Patent No. 6,716,251 ("the '251 Patent") and U.S. Patent No. 7,731,758 ("the '758 Patent"). In general, the claims of the '251 Patent are directed to bioresorbable injectable implants for human administration,

and the claims of the '758 Patent are directed to a reconstitutable product. Galderma S.A. has granted Galderma Laboratories L.P. ("Galderma Labs") an exclusive license to both the '251 Patent and the '758 Patent in the United States. Galderma Labs markets and sells SCULPTRA® Aesthetic and SCULPTRA® (together "SCULPTRA®") in the United States, and Galderma S.A. markets and sells SCULPTRA® in international markets. SCULPTRA® is an injectable polylactic acid formulation used to correct wrinkles and folds in human skin. Claims of the '251 Patent and the '758 Patent cover SCULPTRA®.

Starting in 2007, Defendants Medinter US LLC, Medinter Ltd. UK, Medinter Ltd. BVI, and Medgraft Microtech, Inc. (together the "Corporate Defendants") manufactured, used, offered for sale, and/or sold a competing product in the United States—DERMA VEIL CUTANEOUS BIO-STIMULANT ("DERMA VEIL"). DERMA VEIL is an injectable dermal filler product that is made of polylactic acid, glycolic acid, carboxy methyl cellulose sodium, mannitol, and polysorbate. It's used to treat wrinkles, creases, and minor scars. Angel Barraza Y Del Toro and Brenda J. Farrington are principals of the Corporate Defendants. The Corporate Defendants contracted with various manufacturers to make DERMA VEIL in the United States, including Attwill Medical Solutions, Inc., Anteco Pharma, LLC, and Wilmax LLC. The Corporate Defendants also granted DermAvance Pharmaceuticals, Inc. the exclusive rights to promote and sell DERMA VEIL in the United States. Between November 29, 2012 and January 3, 2022, the Corporate Defendants and/or their contractors manufactured 219,135 vials of DERMA VEIL in the United States.

By May of 2022, the Corporate Defendants had sold 181,133 of those vials. They did not provide additional sales data after that time.

The Corporate Defendants' manufacture, use, offers for sale, and sales of DERMA VEIL in the United States infringed both the '251 and the '758 Patent in various ways. By way of example only, DERMA VEIL's "Instructions for Use" describe the product as a lyophilized low viscosity, non-toxic, bioabsorbable and biodegradable material. As such, the manufacture, use, offers for sale, and sales of DERMA VEIL infringed Claims 1-7, 12-13, 16-18, and 20 of the '251 Patent, at least. The same Instructions for Use also explain that DERMA VEIL is activated by injecting into the vial 8 ml of either physiological saline solution or sterile water for injection. Thus, the Corporate Defendants' manufacture, use, offers for sale, and sales of DERMA VEIL in the U.S. infringe Claims 1, 3-6, 9, and 10 of the '758 Patent as well.

The Corporate Defendants committed direct infringement of both patents by making, having made, using, offering to sell, and selling DERMA VEIL in the United States, in violation of 35 U.S.C. § 271(a). They also committed indirect infringement of both patents by actively encouraging others to infringe those patents directly, in violation of 35 U.S.C. § 271(b). In addition, the Corporate Defendants infringed the '251 Patent by exporting DERMA VEIL from the United States, knowing, intending, and actively instructing and inducing third party distributors, downstream physicians, and healthcare providers outside of the United States to combine lyophilized DERMA VEIL with

physiological saline solution or sterile water for activation and human administration, in violation of 35 U.S.C. § 271(f).

The Corporate Defendants knew about the '251 Patent. The SCULPTRA® product is marked with the '251 Patent, and the Corporate Defendants also had actual knowledge of that patent. Keith A. Greathouse, the President and CEO of DermAvance, "previously served as the executive vice president for Sanofi-Aventis Dermatology, where he was involved in the development and launch of … SCULPTRA® …." (D.I. 353 at ¶ 83.) Mr. Greathouse was very familiar with SCULPTRA® and was aware that the '251 Patent covered it. In 2007, while DermAvance and the Corporate Defendants were negotiating DermAvance's rights to distribute DERMA VEIL, Mr. Greathouse told Mr. Barraza about the '251 Patent. Mr. Barraza also admitted that as of 2012, he knew that SCULPTRA® was covered by at least one patent, and he suspected that a third-party could be infringing Galderma's patent by selling a product similar to SCULPTRA®.

B.  **Procedural History**

On November 29, 2018, Galderma S.A. and Galderma Labs (together "Galderma") filed suit against Medinter US LLC, Medinter Ltd. UK, Attwill Medical, Attwill Vascular Technologies LP, Anteco, and DermAvance. Galderma added Medgraft Microtech, Inc. and Medinter Ltd. BVI as additional defendants in its First Amended Complaint and Third Amended Complaint, respectively. Over the course of the litigation, Galderma settled its

claims against Attwill Medical, Attwill Vascular, Anteco, and DermAvance. Anteco paid Galderma $575,000 as part of the settlement between the parties.

During discovery, Galderma learned that the Corporate Defendants' principals, Mr. Barraza and Ms. Farrington (the "Individual Defendants"), "exerted crippling control of the day-to-day management such that the entities act exclusively at their direction." (D.I. 363 at ¶ 25.) Thus, Galderma filed a Fourth Amended Complaint ("FAC") to assert claims against the Individual Defendants and assert an alter ego theory of liability. However, Galderma settled its claims against the Individual Defendants and dismissed them with prejudice. Thus, the Corporate Defendants are the only remaining defendants left in this case.

On January 6, 2023, after they answered the FAC, the Corporate Defendants filed an Emergency Motion For A Stay, advising Judge Burke that their then-Counsel, Wilson Sonsini Goodrich & Rosati, P.C., would be filing a motion to withdraw as counsel and that they needed time to find new representation. Judge Burke held a hearing and granted Wilson Sonsini's motion to withdraw, and he gave the Corporate Defendants until late March to retain new counsel. Judge Burke later extended the deadline until April 26, 2023, after Ms. Farrington asked for more time. No attorney entered an appearance for the Corporate Defendants by the deadline.

On April 27, 2023, Galderma sought an entry of default against the Corporate Defendants. Judge Burke noted his intent to enter default pursuant to Federal Rule of Civil

5

Procedure 55(a) on May 4, 2023, unless new counsel entered an appearance on behalf of the Corporate Defendants before then. In doing so, he ordered counsel for the Individual Defendants to advise them about his intentions, since they are both principals of the Corporate Defendants. The Corporate Defendants did not hire substitute counsel, and Judge Burke ordered the Clerk of Court to enter a default against them. The Clerk entered default against them on May 4, 2023.

Galderma then moved for a default judgment against the Corporate Defendants, but I denied that motion because the Individual Defendants were still in the case. However, once the parties stipulated to dismiss the Individual Defendants, Galderma filed a renewed motion for default judgment against the corporate parties. It filed its motion on October 6, 2023, and it served the motion on the Corporate Defendants' former counsel and counsel for the Individual Defendants. To date, the Corporate Defendants have not responded to the motion, which is ripe for disposition.

## II.    LEGAL STANDARD

The Federal Rules of Civil Procedure authorize a district court to enter a default judgment against a properly served defendant who fails "to plead or otherwise defend" itself in the matter. *See* Fed. R. Civ. P. 55(b)(2). Because the entry of a default judgment is a procedural question that does not, by itself, implicate substantive patent law, I look to Third Circuit law to determine the standards for entry of a default judgment. *See GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1272 (Fed. Cir. 2001). "By its very language, the 'or

otherwise defend' clause is broader than the mere failure to plead" and can encompass a defendant's "failure to comply with … **unambiguous orders to obtain substitute counsel**, file a pretrial memorandum, and respond to the plaintiffs' discovery requests." *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 917, 918 (3d Cir. 1992), *abrogated on other grounds by*, *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022) (emphasis added).

To obtain a default judgment pursuant to Rule 55(b)(2), a litigant must first obtain an entry of default from the Clerk of Court pursuant to Rule 55(a). Then, before entering a default judgment, a court must consider: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). A court need not find that all three factors are satisfied to enter default judgment. *See Hritz v. Woma Corp.*, 732 F.2d 1178, 1184 (3d Cir. 1984) (explaining that it is not "an abuse of discretion for a trial judge to enter a default judgment to sanction a party who has callously disregarded repeated notices of a judicial proceeding" even where that party has a meritorious defense).

In addition, the Third Circuit "require[s] consideration of the *Poulis* factors … when a district court enters a default judgment pursuant to Rule 55(b) as a sanction for failure to plead or otherwise defend[.]" *Knoll v. City of Allentown*, 707 F.3d 406, 409 (3d Cir. 2013). Thus, in addition to the *Chamberlain* factors, a court must also consider: "(1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure

7

to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense." *Id.* at 409 n.2 (quoting *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984)). These considerations overlap with the *Chamberlain* factors. "The court should consider all six factors but need not find all six" to enter a default judgment. *United States v. Brace*, 1 F.4th 137, 143 (3d Cir. 2021).

"A consequence of the entry of a default judgment is that 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (quotation omitted). Before entering a default judgment, however, "the Court must decide whether 'the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" *Seed River, LLC v. AON3D, Inc.*, No. 21-cv-1497-GBW, 2023 WL 1778630, at *2 (D. Del. Feb. 6, 2023) (quoting *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008)).

### III. DISCUSSION

#### A. *Chamberlain* **And** *Poulis* **Factors**

Consideration of both the *Chamberlain* and *Poulis* factors demonstrates that default judgment is warranted.

There is no doubt that Galderma will suffer prejudice if I do not enter a default judgment against the Corporate Defendants. Indeed, "[i]t is well-settled in the Third Circuit that corporations cannot represent themselves *pro se*." *Carolee, LLC v. eFashion Sols., LLC*, No. 12-cv-2630 WHW, 2013 WL 3336789, at *3 (D.N.J. July 2, 2013). Over the course of many months, the Corporate Defendants have not retained substitute counsel, preventing Galderma from pursuing its infringement claims against them. Such an indefinite wait prevents Galderma from proving its claims and collecting damages as a result of the Corporate Defendants' infringement.

The Corporate Defendants' delay in hiring new counsel is willful, at least. By January 6, 2023, when they filed an Emergency Motion For A Stay in light of an impending motion to withdraw from Wilson Sonsini, the Corporate Defendants were on notice that they may need to retain substitute counsel. After granting the motion to withdraw, and an additional extension, Judge Burke gave the Corporate Defendants until April 26, 2023 to find new representation. They never did, even with notice that Judge Burke intended to enter a default against them. Since the Clerk of Court entered a default, Galderma has twice moved for a default judgment. Though it did not need to serve the Corporate Defendants with its motions (*see* Fed. R. Civ. P. 5(a)(2)), Galderma made served both motions on Counsel for the Individual Defendants (the Corporate Defendants' principals). Yet, the Corporate Defendants have still not hired replacement counsel, despite having ample time to do so and despite their principals twice receiving notice of Galderma's

9

motions. Given this history, and the delay of nearly a year to retain new counsel, I am forced to conclude that the Corporate Defendants' failure to do so is willful. Likewise, given their complete absence from the case for the better part of a year, entering a default judgment is the only effective sanction I can impose.

Based on their Answer to the FAC, the Corporate Defendants appear to have litigable defenses such as invalidity, non-infringement, and prosecution history estoppel. *See Hritz*, 732 F.2d at 1181 ("[A] meritorious defense is presumptively established when the 'allegations of defendant's answer, if established on trial would constitute a complete defense to the action.'"). Nevertheless, they have failed to continue pursuing them through active litigation in this case. Thus, the great weight of the relevant factors warrants the entry of a default judgment against them.

**B.     Infringement**

The Clerk of Court entered a default against Defendants, so I accept all of Galderma's well-pleaded factual allegations as true. Accordingly, I conclude that the Corporate Defendants have committed direct and indirect infringement of both the '251 and '758 Patents, in violation of 35 U.S.C. ¶¶ 271(a)-(b), (f) as set forth in Galderma's FAC.

However, the facts in the FAC and the evidence put forth by Galderma does not support a finding of willful infringement. There are no well-pleaded allegations that the Corporate Defendants knew about the '758 Patent, but there is evidence that they knew about the '251 Patent. However, "[k]nowledge of the asserted patent and evidence of

infringement is necessary, but not sufficient, for a finding of willfulness." *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021). In addition to these facts, Galderma must show that the Corporate Defendants "had a specific intent to infringe at the time of the challenged conduct." *Id.* at 987. While Galderma argues that the Corporate Defendants can "have no good faith basis for believing that their accused product does not infringe the Asserted Patents," (D.I. 467 at 10), it has not put forth any evidence, even circumstantial evidence, of their actual subjective intent to infringe the '251 Patent. Absent facts that establish the Corporate Defendants' "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, [or] flagrant" conduct, *Bayer*, 989 F.3d at 988, Galderma is not entitled to a default judgment on its claim of willful infringement.

### C.     Damages

#### 1.     Reasonable Royalty

Because Galderma did not seek a sum certain as damages in its FAC, I must determine the damages to which it is entitled. Where, as here, a plaintiff has established infringement, "the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284. Infringement is not limited to sales of an infringing product and includes the manufacture, use, or offer to sell a patented invention within the United States. *See* 35 U.S.C. § 271(a). Thus, a per-unit reasonable royalty can be "based on the number of units

ultimately … made[.]" *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1330 (Fed. Cir. 2009); *see also Collins v. Hupp Motor Car Corp.*, 22 F.2d 27, 32 (6th Cir. 1927). Galderma has demonstrated that it is entitled to a reasonable royalty of $5,697,510.

"A reasonable royalty can be calculated from … a hypothetical negotiation between the patentee and infringer based on the factors in *Georgia–Pacific Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D.N.Y.1970)." *Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010). Utilizing those factors, Galderma's damages expert, Michael E. Tate, arrived at a reasonable royalty rate of $26 per vial of DERMA VEIL. In addition, the evidence demonstrates that between November 29, 2012, and January 3, 2022, the Corporate Defendants and/or their contractors manufactured 219,135 vials of DERMA VEIL in the United States. Thus, Galderma is entitled to a total reasonable royalty in the amount of $5,697,510 (219,135 vials x $26 per vial = $5,697,510).

However, I will reduce the reasonable royalty amount by $575,000, which represents the settlement proceeds that Galderma received from Anteco in connection with its claims in this case. Indeed, Galderma acknowledges "that this amount should be deducted from the overall damages calculation to avoid a double recovery." (D.I. 467 at 11.) Thus, Galderma is entitled to $5,122,510 in damages from the Corporate Defendants.

### 2. Pre- And Post-Judgment Interest

The Patent Act provides for an award of interest, upon finding infringement. *See* 35 U.S.C. § 284. Indeed, "Congress intended that 'prejudgment interest should ordinarily

be awarded where necessary to afford the plaintiff full compensation for the infringement.'" *Kaufman v. Microsoft Corp.*, 34 F.4th 1360, 1373-74 (Fed. Cir. 2022) (quoting *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 654 (1983)). Therefore, the "award of pre-judgment interest is 'the rule, not the exception." *Energy Transp. Grp., Inc. v. William Demant Holding A/S*, 697 F.3d 1342, 1358 (Fed. Cir. 2012) (quotation omitted). In this case, "an award of prejudgment interest is necessary to ensure that [Galderma] is placed in as good a position as [it] would have been had [Defendants] entered into a reasonable royalty agreement." *Kaufman*, 34 F.4th at 1374 (quotation omitted). In addition, Galderma is entitled to post-judgment interest going forward. *See* 28 U.S.C. § 1961. Galderma may file a motion at a later date to determine the appropriate amount of interest to be applied to the judgment.

## IV.   CONCLUSION

Galderma has demonstrated that the Corporate Defendants infringed the '251 and '758 Patents and that it is entitled to a default judgment against them in the amount of $5,122,510. Because Galderma has not demonstrated that the infringement was willful, I will not treble the damages figure. However, Galderma is entitled to both pre- and post-judgment interest. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

December 21, 2023